```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION


iHEALTHCARE, INC.,                  )
                                    )
            Plaintiff               )
                                    )
        v.                          )    CIVIL NO. 2:11 cv 396
                                    )
BARBARA GREENE; HILTON HUDSON,      )
MD; PAUL JONES, MD,                 )
                                    )
            Defendants              )
```

## OPINION AND ORDER

This matter is before the court on the Motion to Disqualify Counsel [DE 23] filed by the defendant, Paul Jones, on January 9, 2012, and the Motion to Disqualify Counsel [DE 36] filed by the defendant, Barbara Greene, on January 29, 2012. For the reasons set forth below, both motions are **GRANTED.**

## Background

Heartland Memorial Hospital was an Indiana limited liability company that operated a number of for-profit physician practices and owned other healthcare businesses and medical practices in Indiana and Illinois. The plaintiff, iHealthcare, owned 100% of the equity membership interests of Heartland Hospital and controlled its business affairs. iHealthcare is an Indiana Corporation owned in part by Harold Collins, iHealthcare's attorney in the present matter. Collins also was a member of iHealthcare's Board of Directors from 1994 until March 20, 2006, and served as

General Counsel and Chief Financial Officer of iHealthcare and Heartland Hospital from 1994 until October 2005.

From 2002 until November 2004, iHealthcare, on behalf of Heartland Hospital, undertook the development of an acute care hospital facility.  iHealthcare arranged and guaranteed Heartland Hospital's major financing and capital requirements, including, but not limited to, approximately $3.5 million of iHealthcare convertible debentures, the proceeds of which were loaned to Heartland Hospital and used as money to construct the new facility.

On August 30, 2004, Heartland Hospital entered into a refinancing agreement, commonly referred to as a "sale/leaseback". Under the agreement, Heartland Hospital agreed to sell its Munster Hospital Facility to Munster Holdings, an Indiana limited liability company, for the sum of $30 million dollars.  At the time the facility was valued at $40,000,000.  Heartland Hospital agreed to lease the facility back from Munster Holdings pursuant to a long-term lease with a repurchase option for $30,000,000.

In June 2005, iHealthcare was approached by Wright Captial Partners, LLC, as prospective buyers for the Heartland Hospital assets and iHealthcare's equity interest in Heartland Hospital. Wright subsequently created a new business entity to effect the iHealthcare stock purchase that was ultimately named HM Holdings.

On October 10, 2005, iHealtcare executed a merger agreement whereby Wright Capital committed to lend iHealtcare $2.5 million dollars on behalf of Heartland Hospital provided that LeRoy Wright be named as Chairman of the Board, Alfred Sharp as Chief Financial Officer, and Jeffrey Yessenow as Chief Executive Officer. The loan amount was later increased to $4.8 million.

iHealthcare alleges that the financial condition of iHealthcare and Heartland began to deteriorate after the merger under the new management. iHealthcare was forced to file Chapter 11 bankruptcy on March 16, 2007, in the United States Bankruptcy Court for the Northern District of Indiana. iHealthcare alleges that the new management breached its fiduciary duties by a number of acts including: transferring the facility and its equipment for $20,000,000 less than fair market value to Sisters of St. Francis Health Services; failing to get an appraisal of the facility; failing to supervise the hospital to prevent looting; bankrupting the companies by entering detrimental transactions; and various other activities. iHealthcare further complains that the defendants made false and deceitful representations to induce all parties to enter into the St. Francis sale/leaseback agreement. One of the agreements St. Francis made was that it would settle the contractual claims of Vijay Gupta M.D. and Collins, the target of both motions.

Collins previously had negotiated an employment contract for himself and Gupta with iHealthcare. In a separate action in the Circuit Court of Cook County, Illinois, iHealthcare is suing Collins for malpractice, alleging that the contracts were bogus, never approved by the iHealthcare board, and were unfair and unreasonable. iHealthcare has taken the position that the contracts were procured by fraud and that Collins knowingly made fraudulent representations to iHealtchare's corporate parent to induce the contracts. iHealthcare's wholly owned subsidiary, Heartland Hospital, also has litigation pending against Collins for malpractice and breach of fiduciary duties with respect to the 2004 and 2006 employment agreements. Collins filed a lawsuit against iHealthcare for fraudulent conspiracy and breach of two separate employment agreements iHealthcare allegedly entered with Collins in 2004 and 2006 respectively.

The defendants now move to disqualify Collins as iHealthcare's attorney in the present matter, arguing that the pending litigation in the Circuit Court of Cook County conflicts with his duty to exercise professional judgment on behalf of his client. In this matter, Collins' and Gupta's contracts are entangled in iHealtchcare's fraud claims against Jones, Greene, and Hudson. Specifically, Collins argues here, on behalf of iHealthcare, that the contracts were valid and that the sale/leaseback was approved

4

in part because St. Francis agreed to settle the contract claims. In the state court malpractice case, iHealthcare has taken the opposite position, arguing that Collins procured the contracts by fraud. In light of the conflicting positions, the defendants argue that Collins cannot represent iHealthcare because his personal and financial interest in the pending state court litigation may interfere with his ability to exercise professional judgment in this matter. Moreover, the defendants argue that Collins' role in procuring the contracts, which are entangled in iHealthcare's claim against the defendants, renders him a necessary witness and provides further reason why he cannot continue representing iHealthcare.

## Discussion

The defendants move to disqualify Collins as iHealthcare's attorney, arguing that his representation violates Indiana Rules of Professional Conduct 1.7 and 3.7 because iHealthcare and Collins have ongoing litigation arising from the same events in state court and Collins will be a necessary fact witness to the present litigation. A motion to disqualify should be viewed with caution and considered a drastic remedy. ***Owen v. Wangerin***, 985 F.2d 312, 317 (7th Cir. 1993). The local rules of this court state that "Indiana's Rules of Professional Conduct and the Seventh Circuit Standards of Professional Conduct (an appendix to

5

these rules) govern the conduct of those practicing in the court." Local Rule 83.5(e)

Rule 1.7 of the Indiana Rules of Professional Conduct reads:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
>> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>>
>> (2) the representation is not prohibited by law;
>>
>> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>>
>> (4) each affected client gives informed consent, confirmed in writing.

Here, the defendants urge that Collins has a personal interest in the litigation because he has a financial stake in the outcome of the litigation and he is setting forth an argument contrary to the position iHealthcare is taking against him in the separate state court litigation.

An attorney cannot advance his own interests at the expense of his client. *Matter of Strutz*, 652 N.E.2d 41, 47 (Ind. 1995). "A lawyer commits a breach of trust going to the very essence of the attorney-client relationship when he takes a position adverse to that of his client, or former client, in a business transaction." *Bell v. Clark*, 653 N.E.2d 483, 490 (Ind. App. 1995). This includes accepting employment "if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial or business interests unless the client consents after full disclosure." *Strutz*, 652 N.E.2d at 47. If the lawyer's conduct in a transaction raises a serious question, it is unlikely that the lawyer can fulfill his duty and give a client independent advice. Rule 1.7, Cmt. 10. Moreover, the comments to Rule 1.7 explain that a lawyer is prohibited from acting as an advocate "in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated."

Collins, on behalf of iHealthcare, advances several arguments in opposition to the defendants' motions.  First, Collins argues that the bankruptcy court addressed whether Collins had a conflict of interest when the defendants opposed his appointment as special counsel.  Collins argues that further consideration is barred by stare decisis or collateral estoppel.  Collins further contends that the defendants lack standing to raise the conflicts because they are not and never have been represented by Collins.  Should the court consider the defendants' motions on the merits, Collins maintains that iHealthcare consented to the conflicts and the underlying malpractice claims were voluntarily dismissed and no longer pose a conflict.

Before the court may hear the merits of the case, it first must determine whether the defendants have standing to question Collins' continued representation of iHealthcare. Collins argues that because he never represented the defendants and an attorney-client relationship never was created, the defendants lack standing to raise any potential conflicts between Collins and iHealthcare.

Three elements must be satisfied to impart standing: injury, causation, and redressability. ***Lujan v. Defenders of Wildlife***, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); ***American Civil Liberties Union of Illinois v. Alvarez***,

2012 WL 1592618, *5 (7th Cir. 2012). A party must suffer an injury to his own rights to have standing. *Freedom From Religion Foundation, Inc. v. Obama*, 641 F.3d 803, 806 (7th Cir. 2011). The Seventh Circuit has not addressed whether any circumstances exist where a third-party to the attorney-client relationship has suffered a personal injury sufficient to confer standing. *See Rudzinski v. Metropolitan Life Insurance Co.*, 2007 WL 3171338, *4 (N.D. Ill. Oct. 25, 2007). However, other Circuit Courts and District Courts within this Circuit routinely have determined that third-parties have standing to bring a motion to disqualify under certain circumstances. *Rudzinski*, 2007 WL 3171338 at *4 (*citing* *Kevlik v. Goldstein*, 724 F.2d 844, 847-48 (1st Cir. 1984); *United States v. Clarkson*, 567 F.2d 270, 271 n.1 (4th Cir. 1977); *Brown & Williamson Tobacco Corp. v. Daniel Int'l Corp.*, 563 F.2d 671, 673 (5th Cir. 1977)).

It is generally the responsibility of the lawyer undertaking the representation to resolve conflicts, however, when that attorney has neglected his duty, opposing counsel may raise the question if he has "evidence clearly calling into question the fair and efficient administration of justice." Rule 1.7, Committee Notes; *Rudzinski*, 2007 WL 3171338 at *4. The third-party may satisfy this burden by presenting evidence that the attorney intends to take a position contrary to the interest of the client

9

or by establishing that the attorney with the conflict is an essential witness and his testimony will prejudice his client. See **Rudzinski**, 2007 WL 3171338 at *4.

The defendants have presented evidence showing that Collins will personally benefit from taking a position that may be contrary to iHealthcare's best interest. Collins stands to receive a personal benefit if he pursues the fraud claim against St. Francis for failing to settle his claim for breach of contract. To succeed, Collins, on behalf of iHealthcare, will need to prove that the contract was valid. This is contrary to the position iHealthcare is pursuing in its case against Collins in the Circuit Court of Cook County. It is unlikely that Collins will be able to provide professional, unbiased service to his client as to which theory is in its best interest to pursue when he stands to gain by establishing that the contract is valid. The defendants have presented sufficient evidence to establish that this conflict is viable and, for this reason, have standing to pursue their motion to disqualify.

Collins next argues that the motion is barred by stare decisis, collateral estoppel, or res judicata because the Bankruptcy Court for this district determined that Collins could serve as special counsel for iHealthcare over the creditor's objections. Stare decisis is "[t]he doctrine of precedent, under

which a court must follow earlier judicial decisions when the same points arise again in litigation." Black's Law Dictionary p. 1537 (9th ed. 2009). Under this doctrine, courts are bound to follow the law as set forth by higher courts. Collins' reliance on stare decisis is misplaced. This court is bound to follow the law as set forth by the Seventh Circuit and the Supreme Court. However, Collins is not asking the court to follow the law set forth by another court but to find that a previous decision relating to this factual matter is binding on the court. This is more appropriately evaluated under the collateral estoppel doctrine.

Collateral estoppel, or issue preclusion, limits the litigation of issues that have been decided between parties in a prior action, and it applies only when the same issue is involved in the second proceeding and the determination of that question is "essential" to the prior judgment. *King v. Burlington Northern & Santa Fe Ry. Co.*, 538 F.3d 814, 818 (7th Cir. 2008). The Supreme Court reiterated the requirements for issue preclusion, noting that "[i]ssue preclusion . . . bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v.*

11

*Sturgell*, 553 U.S. 880, 128 S.Ct. 2161, 2171, 171 L.Ed.2d 155 (2008).

If the issue was not litigated in an earlier proceeding but it could have been, "the resulting preclusive effect is claim preclusion." *Leal v. Krajewski*, 803 F.2d 332, 335 (7th Cir. 1996). *See also Lewis v. Suthers,* 2012 WL 1564132, *1 (7th Cir. May 4, 2012); *Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012)*; Miller Brewing Co. v. Indiana Department of State Revenue,* 903 N.E.2d 64, 70 (Ind. 2009)*; Afolabi v. Atlantic Mortgage & Investment Corp.,* 849 N.E.2d 1170, 1174 (Ind. App. 2006). Under Indiana law, when a party argues that the claim preclusion component of res judicata applies, four factors must be present, namely: (1) the former judgment must have been rendered by a court of competent jurisdiction; (2) the former judgment must have been rendered on the merits; (3) the matter now in issue was, or could have been, determined in the prior action; and (4) the controversy adjudicated in the former action must have been between parties to the present suit or their privies. *In re L.B.*, 889 N.E.2d 326, 333 (Ind. App. 2008).

The parties dispute whether the bankruptcy court reached the issues raised in the present motion to disqualify when determining whether to appoint Collins as special counsel. Title 11 U.S.C. §327 allows the trustee in a bankruptcy proceeding to

appoint special counsel to assist the trustee in carrying out his duties. The special counsel must not hold an interest adverse to the estate and must be disinterested. 11 U.S.C. §327(a). Under the Bankruptcy Code, a non-disinterested party is one who may have an economic or practical interest that would lessen the value of the estate, including creditors, insiders, and directors who held the position within two years before the date the bankruptcy petition was filed. 9 Am.Jur.2d Bankruptcy §206.

The creditors opposed Collins' appointment, arguing that he was an interested party because he served as a director of the company and represented that he may become involved as the attorney for a member of the Board of Managers in the claim settlement process as the shareholder representative of the former iHealthcare, Inc. However, Collins' involvement in the present matter was not an actual conflict at the time the Bankruptcy Court reached its decision. The defendants' motion did not address the malpractice or fraud claims pending in state court, nor did it address the standard set forth by Indiana's Rules of Professional Conduct. The issue decided by the Bankruptcy Court was distinctly different and analyzed under a different standard. Because the Bankruptcy Court did not determine whether Collins had a conflict of interest under the Indiana Rules of Professional Conduct, or even whether Collins was

13

disinterested in spite of the malpractice and fraud claims pending between Collins and iHealthcare in state court, collateral estoppel is inapplicable as there was no prior decision on point governing how this court must rule.

The only viable argument Collins may assert is that the issue is barred by claim preclusion because it could have been raised in an earlier proceeding. Claim preclusion applies only when the same parties, or their privies, were parties to the prior litigation. Collins ignores that Jones was not a party to the case before Bankruptcy Judge Harry Dees or in the cases pending in the Circuit Court of Cook County. Therefore, claim preclusion does not bar Jones from raising any issues Judge Dees reached in his decisions at the present time.

Collins also relies on Judge Dees' orders to show that all matters that may have created a conflict have been resolved and that there is no risk of prejudice to iHealthcare. Specifically, Collins argues that the February 19, 2010 and July 22, 2010, Orders dismissed iHealthcare's fraudulent conveyance claims against Collins pursuant to Federal Rule of Civil Procedure 41(b). Collins maintains that any issues, including the malpractice and breach of fiduciary duty claims, should have been raised with the fraudulent conveyance claims, and because they were not,

14

iHealthcare is precluded from pursuing these claims and there no longer remains a conflict of interest.

Regardless, iHealthcare's malpractice and breach of fiduciary duty claims remain pending. The Circuit Court of Cook County has not dismissed the case despite Judge Dees' previous orders. There is no guarantee that the judge presiding over iHealthcare's fraud and malpractice claims will find res judicata applicable and will dismiss the claims. The court also is unable to foresee whether any future problems will arise from the apparent conflict of interest.

Collins next points to an informed consent waiver, arguing that iHealthcare has waived any potential conflict. Conflicts of interest may be waived by consent, provided (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal. Rule 1.7(b). Collins attached the waiver of conflicts iHealthcare signed, which disclosed the pending litigation and potential conflicts. However, the defendants maintain that Collins' representation of iHealtchare conflicts with his self representation against and in

15

defense of iHealthcare's claims in another tribunal, and therefore cannot be waived. The court agrees with this analysis. Collins is representing himself in claims that directly conflict with iHealthcare's position in this matter, and this type of conflict is not subject to waiver. Collins has a personal interest in establishing that the contracts he negotiated with iHealthcare are valid, which may harm iHealthcare's position in the pending state court litigation. iHealthcare deserves an independent, unbiased opinion on which theory to pursue.

The defendants also complain that Collins' representation of iHealthcare violates Rule 3.7 of the Indiana Rules of Professional Conduct, which states:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

The primary consideration under Rule 3.7 is whether the lawyer is a "necessary witness." *Knowledge A-Z, Inc. v. Sentry Insurance*, 857 N.E.2d 411, 418 (Ind. App. 2007). By its own terms, the rule does not extend automatically its proscription to members of a testifying attorney's firm. *See Harter v. University of Indianapolis*, 5 F.Supp.2d 657, 667 n.4 (S.D. Ind. 1998). Rather, the rule protects against the risk that an individual attorney's role as an advocate will be diminished by also serving as a witness. *Harter*, 5 F.Supp.2d at 663 (*quoting Gusman v. Unisys Corporation*, 986 F.2d 1146, 1148 (7th Cir. 1993). Commonly, courts find the rule's necessity requirement met when the attorney's testimony is "relevant, material, and unobtainable elsewhere." *Stewart v. Bank of America N.A.*, 203 F.R.D. 585, 586 (M.D. Ga. 2001); *Carta ex. rel. Estate of Carta v. Lumbermens Mutual Casualty Company*, 419 F.Supp.2d 23, 29 (D. Mass. 2006) (*quoting Merrill Lynch Business Financial Svcs., Inc. v. Nudell*, 239 F.Supp.2d 1170, 1173 (D. Colo. 2003); *Macheca Transport Co. v. Philadelphia Indemnity Insurance Company*, 463 F.3d 827, 833 (8th Cir. 2006) (*quoting State ex rel. Wallace v. Munton*, 989 S.W.2d 641, 646 (Mo. App. 1999)("[The rule] has been interpreted to mean an attorney is a 'necessary witness' only if 'there are things to which he will be the only one available to testify.'"). The rule requires that the court weigh the client's interest in

continued representation against the risk of prejudice to the opposing party. *Hutchinson v. Spanierman*, 190 F.3d 815, 828 (7th Cir. 1999).

The plain language of the rule regards testimony given during the course of a trial. See Rule of Professional Conduct 3.7, comments 3, 6. *See also Main Events Productions, LLC v. Lacy*, 220 F.Supp. 353, 356 (D.N.J. 2002) (collecting cases regarding similar rules based on ABA model rules). However, the likelihood that an attorney is a necessary witness does not require certain proof that the attorney will be a witness. *See Freeman v. Vicchiarelli*, 827 F.Supp. 300, 303 (D.N.J. 1993); *Stewart,* 203 F.R.D. at 586. The party seeking disqualification of opposing counsel bears the burden of proving the relevancy and need for the attorney's testimony. *Estate of Carta*, 419 F.Supp.2d at 29; *Macheca Transport Company*, 463 F.3d at 833 ("Blanket allegations that an attorney's testimony is relevant to a party's claim is an insufficient basis upon which to discern whether the attorney will truly be a necessary witness in the sense that there are things to which he will be the only one available to testify.").

Collins served as CFO and General Counsel to iHealthcare and its affiliated entities for a lengthy period of time, much of which is relevant to the present dispute. Collins may be called

to testify about his service in these capacities. However, the defendants state that he certainly will be called to testify to his actions related to the creation of the 2004 and 2006 employment contracts between iHealthcare, Collins, and Gupta that Collins negotiated and executed. The employment contracts are entangled in iHealthcare's claim against the defendants. iHealthcare argues that St. Francis agreed to settle Collins' and Gupta's claims. However, the validity of the contracts must be established, especially because iHealthcare alleges in a separate action that Collins executed the agreement without approval of the board, failed to disclose material facts, failed to advise iHealthcare to obtain independent counsel, and entered a contract with his client that was unfair. Because the validity of both Collins' and Gupta's contracts is an issue that must be established as part of iHealthcare's fraud claim against St. Francis, and Collins was the individual who executed the 2004 contract and participated in the negotiations for the 2006 contracts, his testimony will be essential to establishing the validity of the contract and Collins will be required to testify at least with respect to the contracts. When an attorney's testimony is necessary to the litigation, the conflict cannot be waived. Therefore, Collins must be disqualified under Rule 3.7.

_____

Based on the foregoing, the Motion to Disqualify Counsel [DE 23] filed by the defendant, Paul Jones, on January 9, 2012, is **GRANTED**, and the Motion to Disqualify Counsel [DE 36] filed by the defendant, Barbara Greene, on January 29, 2012, is **GRANTED.**

ENTERED this 5th day of June, 2012

                              s/ ANDREW P. RODOVICH
                                  United States Magistrate Judge